UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| KEN-MAC METALS ) | |
|       Plaintiff, ) | 3:09-cv-00693-VPC |
|     v. ) | |
| INDEPENDENT SHEET METAL, INC. ) | **ORDER** |
|       Defendant. ) | August 29, 2011 |

Before the court is plaintiff Ken-Mac Metal's ("Ken-Mac") motion for summary judgment (#58).[1] Independent Sheet Metal ("Independent") did not oppose. Ken-Mac filed a reply in support of its motion (#61). Upon thorough review of the unopposed motion, the court grants Ken-Mac's motion for summary judgment (#58).

## I. FACTUAL & PROCEDURAL BACKGROUND

The present dispute is based upon an order for stainless steel that Independent, a manufacturer of kitchen hoods, placed with Ken-Mac. *Id.* at 4. Ken-Mac delivered the steel in two shipments: (1) Invoice 58851, in the amount of $59,462.74 and (2) Invoice 59139, in the amount of $43,441.40. *Id.* at 6-7. Independent accepted the steel, but did not pay the amounts due for either invoice. *Id.* Ken-Mac filed a complaint alleging that Independent breached its contract, account stated, and quasi contract by not paying for the steel it received from Ken-Mac (#1).

In preparation for trial, the parties engaged in discovery and submitted a joint pretrial order on October 19, 2010, which the court adopted on December 14, 2010 (#s 41 & 42). During a hearing on January 21, 2011, the court granted Theirry V. Barkley and the law firm of Thorndal, Armstrong, Delk, Balkenbush & Eisinger's motion to withdraw as counsel of record for Independent (#48). Counsel sought withdrawal because Independent "confirmed that it [wa]s unable to pay for services

---

[1] Refers to the court's docket number.

previously incurred as part of the defense in this matter and will not be able to pay the attorneys' fees and costs that would be incurred if the firm continue[d] to represent [Independent] in this matter" (#44, p. 3). Mr. Steven Williams, President of Independent, attended the hearing at which the court granted the motion and confirmed that he is unable to obtain replacement counsel and not able to continue with the litigation due to cost (#48). The court explained to Mr. Williams that he may not proceed *pro se* on behalf of the corporation, vacated the scheduled bench trial, and instructed Ken-Mac to determine how to proceed with its claims. *Id.*

Approximately one month later, on February 28, 2011, and March 1, 2011, Ken-Mac filed a motion for judgment on partial findings (#49) and a motion to dismiss counterclaim (#50). The court issued a Minute Order on March 28, 2011, noting again that Independent may only appear in federal court through an attorney and ordering that the Minute Order, Ken-Mac's motions, and any other documents filed, be served on Mr. Williams until Independent obtains counsel (#51). The court granted Independent twenty-one days from the date of the minute order to oppose Ken-Mac's motions. *Id.* Independent did not oppose either motion. The court subsequently granted Ken-Mac's motion to dismiss Independent's counterclaim (#55). On May 18, 2011, the court issued a Minute Order denying Ken-Mac's motion for judgment on partial findings, noting that the appropriate mechanism for entry of judgment as a matter of law prior to trial is a motion for summary judgment (#54, p. 2). The court granted Ken-Mac leave to file a motion for summary judgment. *Id.*

Pursuant to this Minute Order, Ken-Mac filed the instant summary judgment motion on June 9, 2011 (#58). Ken-Mac seeks summary judgment on its breach of contract claim against Independent. *Id.* Specifically, Ken-Mac asks this court to enter a judgment awarding the amount of the unpaid contracts, $102,904.14; pre-judgment interest in the amount of $60,554.06 as of August 1, 2011, and $50.75 per day thereafter until the date of judgment; and post-judgment interest at the eighteen percent per year contract rate (#61, p. 3 & #58, p. 23-24).[2] Ken-Mac believes it is entitled to these damages based on the undisputed facts outlined in the parties' joint pretrial motion

---

[2] The court uses the figures provided in Ken-Mac's reply, as they reflect the interest calculations as of August 1, 2011 (#61). The court also relies on Rick Hsu's declaration, which Ken-Mac attaches to its motion, for an explanation of the amounts due to Ken-Mac under the contract (#58, pp. 23-24).

(#58, pp. 10-11). Ken-Mac explains that under the common law and the Uniform Commercial Code, which governs the sale of goods such as steel plates, it can demonstrate that Independent breached its contract with Ken-Mac. *Id.* According to the joint pretrial order, the parties agree a contract exists, Ken-Mac performed under the contract by delivering steel to Independent, Independent accepted the steel and used it to manufacture kitchen hoods,[3] Independent failed to pay for the steel at the contract rate, and Ken-Mac experienced damages as a result of Independent's failure to pay (#58, pp. 17-20).

Independent's original deadline to oppose Ken-Mac's motion was July 3, 2011. However, the court issued a Minute Order on July 1, 2011, granting Independent twenty-one days from the date of the Minute Order to oppose Ken-Mac's motion for summary judgment (#59). Independent did not oppose the motion by the July 21, 2011 deadline. Ken-Mac filed a reply supporting its original motion (#61).

## II. LEGAL DISCUSSION AND ANALYSIS

### A.   Discussion

#### 1.   Summary Judgment

Summary judgment allows courts to avoid unnecessary trials where no material factual disputes exist. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court grants summary judgment if no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court must view all evidence and any inferences arising from the evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

---

[3] Independent filed a counterclaim against Ken-Mac, alleging that Ken-Mac delivered defective steel causing Independent to incur expenses to repair the nonconforming sheets of steel (#27). However, the court dismissed these claims based on Independent's indications that it would be unable to prosecute them (#55). The undisputed facts in the joint pretrial order state that Independent did not document the alleged nonconformities, retain any sheets of steel, make any sheets of steel available to Ken-Mac for inspection, provide notification to Ken-Mac of nonconformities, or attempt to reject or revoke acceptance of the steel (#58, pp. 19-20).

3

1    The moving party bears the burden of presenting authenticated evidence to demonstrate the absence of any genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see Orr. v. Bank of America*, 285 F.3d 764, 773-74 (9th Cir. 2002) (articulating the standard for authentication of evidence on a motion for summary judgment). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing that there exists a genuine issue for trial. *Anderson*, 477 U.S. at 248. Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

On summary judgment the court is not to weigh the evidence or determine the truth of the matters asserted but must only determine whether there is a genuine issue of material fact that must be resolved by trial. *See Summers v. A. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir.1997). Nonetheless, in order for any factual dispute to be genuine, there must be enough doubt for a reasonable trier of fact to find for the plaintiff in order to defeat a defendant's summary judgment motion. *See Addisu v. Fred Meyer, Inc.*,198 F.3d 1130, 1134 (9th Cir. 2000).

**B.     Analysis**

In Nevada, contracts for the sale of goods are governed by Article II of the Uniform Commercial Code, which is codified at Nevada Revised Statutes 104.2101 *et seq*. Under the Code, goods include "all things . . . which are movable at the time of identification to the contract for sale." Nev. Rev. Stat. § 104.2105(1). A merchant is a "person who deals in goods of the kind" involved in the transaction. *Id.* § 104.2104(1). "A contract for the sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." *Id.* § 104.2204(1). A contract between merchants includes all terms, even if the contract accepted includes additional or different terms than those offered, unless the offer expressly limits acceptance to the terms offered, the additional terms materially alter the contract, or objection to the additional terms is given within a reasonable time. *Id.* § 104.2207(1-2). Comment five notes that "a clause providing for interest on overdue invoices" involves no element of unreasonable

1  surprise and should be incorporated into a contract unless an objection is timely made. *Id.* at
2  104.2207 cmt. 5.

3        A seller's obligation is to deliver the goods and the buyer's duty is to accept the goods and
4  pay for them according to the terms of the contract. *Id.* § 104.2301. A buyer accepts goods when
5  it "does any act inconsistent with the seller's ownership." *Id.* § 104.2606(1)(c). "The buyer must
6  pay at the contract rate for any goods accepted." *Id.* § 104.2607(1). In order to revoke acceptance,
7  a buyer must notify the seller of the nonconformity giving rise to revocation with a reasonable time
8  after the nonconformity is discovered and before "any substantial change in condition of the goods
9  which is not caused by their own defects" occurs. *Id.* § 104.2608. In the event a buyer fails to pay
10 the contract price, the seller is entitled to recover the price of the goods accepted by the buyer and
11 any incidental damages available under Nevada Revised Statutes § 104.2710. *Id.* § 104.2709.

12       As the disputed contract concerns the sale of stainless steel sheets - movable items - the UCC
13 applies. Additionally, Ken-Mac and Independent are both merchants according to the UCC
14 definition, as the contract involves the sale of stainless steel sheets, Ken-Mac is a seller of stainless
15 steel, and Independent manufactures kitchen hoods using stainless steel. The parties agreed to a set
16 of stipulated facts in their joint pretrial order, which Ken-Mac attaches to its motion. Rule
17 56(c)(1)(A) includes stipulated facts in the list of appropriate evidence to support factual assertions
18 included in a motion for summary judgment. Additionally, Ken-Mac notes at least one Ninth Circuit
19 case, *Kaplan v. City of North Las Vegas*, 323 F.3d 1226, 1231 (9th Cir. 2003), in which admissions
20 in a joint pretrial order were used to demonstrate the absence of genuine issues of material fact (#58,
21 p. 5).

22       The facts "admitted by the parties" that "require no proof," included in the parties' joint
23 pretrial order, show that Independent ordered 1374 steel sheets from Ken-Mac, which Ken-Mac
24 delivered in two separate shipments on March 4, 2008, and March 20, 2008 (#58, pp. 16-18). The
25 parties agree that Independent accepted all of the steel Ken-Mac delivered; Ken-Mac submitted two
26 invoices, numbers 58851 and 59139 to Independent; and Independent did not pay Ken-Mac for either
27 invoice. *Id.* at 17-19. Further, the parties agree that 500 sheets in the first shipment and 500 sheets
28 in the second shipment "were not defective and met all of Independent's specifications and quality

1  requirements." *Id.* at 18-19. "Before this lawsuit was filed Independent did not provide Ken-Mac
2  with any written notification that claimed a portion of the stainless steel supplied by Ken-Mac
3  pursuant to Invoices 58851 and 59139 did not conform to Independent's specifications and
4  requirements." *Id.* at 20. Finally, the parties agree that both invoices included the following
5  statements: "Invoices not paid by the due date will be assessed a service charge of 1-1/2% per month
6  of any unpaid balance. This amounts to 18% per year." *Id.* at 18-19.

7  From these stipulated facts it is clear to the court that Ken-Mac and Independent entered into
8  a contract for the sale of stainless steel sheets. The parties agree that this contract includes the price
9  of the steel, $102,904.14, and interest on late payments in the amount of eighteen percent per year.
10 Ken-Mac, the seller, delivered the steel as required by the contract and Independent, the buyer,
11 accepted the steel. Independent did not notify Ken-Mac of any problems with the product and it used
12 all of the product to manufacture kitchen hoods. Therefore, Independent did not reject the goods,
13 indeed it stipulated to its acceptance, nor did it successfully revoke its acceptance of the steel under
14 the Code. However, Independent did not pay for the steel as required by the terms of the contract
15 in violation of Nevada Revised Statutes § 104.2607(1). As a result, Ken-Mac is entitled to the price
16 of the steel and the interest on Independent's late payments, as listed in the contract, under Nevada
17 Revised Statutes § 104.2709.

18 Therefore, the court finds that Ken-Mac met its burden of proving that there are no genuine
19 issues of material fact. Ken-Mac supplied evidence proving that Independent breached its contract
20 with Ken-Mac and, as a result, owes Ken-Mac the principal balance of $102,904.14. Additionally,
21 Independent owes Ken-Mac eighteen percent annual interest on the late payments under the contract.
22 Invoice 58851 in the amount of $59,462.74 was due April 19, 2008. Invoice 59139 in the amount
23 of $43,441.40 was due May 5, 2008. As of the date of this Order, Invoice 58851 is 1227 days late
24 and Invoice 59139 is 1212 days late, not including the date each invoice was originally due.
25 Therefore, the interest due as of the date of this Order is $61,927.59.[4] After the date of this Order

---

[4] For invoice 58851 in the amount of $59,462.74 the interest due for 1227 days is equal to (($59,462.74 x .18/365) x 1227) or $35,980.66. For invoice 59139 in the amount of $43,411.40 the interest due for 1212 days is equal to (($43,411.40 x .18/365) x 1212) or $25,946.93.

interest on the amount due accrues at a rate of $50.75 per day.[5] Therefore, Independent owes Ken-Mac the principal amount of $102,904.14, pre-judgment interest in the amount of $61,927.59, and post-judgment interest at the rate of $50.75 per day until paid.

### III. CONCLUSION

**IT IS THEREFORE ORDERED** that Ken-Mac's motion for summary judgment (#58) is **GRANTED**.

**IT IS FURTHER ORDERED** that judgment in the principal amount of $102,904.14, pre-judgment interest in the amount of $61,927.59, and post-judgment interest at the rate of $50.75 per day until paid, are owed by Independent to Ken-Mac. The clerk of court shall enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED:** August 29, 2011.

_____
**UNITED STATES MAGISTRATE JUDGE**

---

[5] The daily interest rate is calculated by multiplying the total principal that is overdue by the annual interest rate divided by 365 or $102,904.14 x .18/365.